Breitel, J.
(concurring). I agree that there should be a reversal, but would place the reversal on quite narrow grounds. It is undesirable to lay down prematurely major premises based on shifting ideologies in the choice of law. True, Chief Judge Fued in his concurring opinion in the Looker case (Looker v. Lopez, 24 N Y 2d 569, 583, at p. 584) look the view that there had already occurred sufficient experience to lay down some rules of law which would reduce the instability and uncertainty created by the recent departures from traditional lex loci delictus. This case, arising so soon after, shows that the permutations in accident cases, especially automobile accident cases, is disproof that the time has come.
Problems engendered by the new departures have not gone unnoticed and they are not confined to the courts of this State (Juenger, Choice of Law in Interstate Torts, 118 U. Pa. L. Rev. 202, 214-220). They arise not merely because any new departure of necessity creates problems, but much more because the departures have been accompanied by an unprecedented competition of ideologies, largely of academic origin, to explain and reconstruct a whole field of law, each purporting or aspiring to achieve a single universal principle.
Babcock v. Jackson (12 N Y 2d 473), an eminently correctly and justly decided case, applied the then current new doctrine of grouping of contacts. Troubles arose only when the universality of a single doctrine was assumed (Macey v. Rozbicki, 18 N Y 2d 289; Dym v. Gordon, 16 N Y 2d 120). By the time of Miller v. Miller (22 N Y 2d 12) and the Looker case (24 *131 N Y 2d 569, supra), the new doctrine had been displaced by a still newer one, that of governmental interests developed most extensively by the late Brainerd Currie, and the court was deeply engaged in probing the psychological motivation of legislatures of other States in enacting statutes restricting recoveries in tort cases. Now, evidently, it is suggested that this State and other States may have less parochial concerns in enacting legislation restricting tort recoveries than had been believed only a short time ago. The difficulties this case has given the courts below, and now this court, stems, it is suggested, more from a concern in sorting out ideologies than in applying narrow rules of law in the traditional common-law process (Juenger, op. cit., supra, at p. 233).
What the Babcock case (12 N Y 2d 473, supra) taught and what modern day commentators largely agree is that lex loci delictus is unsoundly applied if it is done indiscriminately and without exception. It is still true, however, that lex loci delictus is the normal rule, as indeed Chief .Judge Fuld noted in the Tooker case (24 N Y 2d 569, supra), to be rejected only when it is evident that the situs of the accident is the least of the several factors or influences to which the accident may be attributed (for discussion, see dissenting opn. in Tooker v. Lopez, 24 N Y 2d, at pp. 595-596). Certain it is that States are hot concerned only with their own citizens or residents. They are concerned with events that occur within their territory, and are also concerned with the “ stranger within the gates (Juenger, op. cit., supra, at pp. 209-210).
In this case, none would have ever assumed that New York law should be applied just because one of the two defendants was a New York resident and his automobile was New York insured, except for the overbroad statements of Currie doctrine in the Tooker case (24 N Y 2d 569, supra), stemming from one. particular school of academic thinking in the field of conflicts law (see the concurring opn. by Judge Burke in the Tooker case, 24 N Y 2d, at pp. 586-592, and forxthat matter, the dissenting opn. by Judge Bergan, in this case).
Consequently, I agree that there should be a reversal and the defenses allowed to stand. The conclusion, however, rests simply on the proposition that plaintiff has failed by her allegations td establish that the relationship to this State was suffi *132 cient to displace the normal rule that the lex loci delictus should be applied, the accident being associated with Ontario, from inception to tragic termination, except for adventitious facts and where the lawsuit was brought.